**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 1:12-CR-15 (WLS) |
| | : | |
| AL J. HURLEY, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**ORDER**

Before the Court is Defendant AL J. HURLEY's Motion for Judgment of Acquittal Notwithstanding the Verdict or, and in the Alternative, for a New Trial. (Doc. 63.) For the following reasons, Defendant's Motion for Judgment of Acquittal Notwithstanding the Verdict or, and in the Alternative, for a New Trial (Doc. 63) is **DENIED**.

**PROCEDURAL HISTORY**

Defendant AL J. HURLEY was tried before a jury in November 2012 on a three-count Indictment charging Defendant with one count of attempted Hobbs Act extortion under color of official right in violation of 18 U.S.C. § 1951, one count of federal program bribery in violation of 18 U.S.C. § 666(A)(1)(B), and one count of making a false statement to the FBI in violation of 18 U.S.C. § 1001(a)(2). On December 3, 2012, the jury returned a verdict of Guilty on the Hobbs Act charge (Count One) and the federal program bribery charge (Count Two), and of Not Guilty on the false statement charge (Count Three). (Doc. 50.)

On November 30, 2012, the Government announced it was resting its case against Defendant. Following excusal of the jury from the courtroom, counsel for Defendant orally entered a motion for judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29. After hearing argument from both sides, the Court announced that it would

1

reserve a decision on the motion and proceed with the trial pursuant to Rule 29(b).  The Court noted that it was obligated to rule on Defendant's Rule 29 motion on the basis of the evidence as it stood at the time the ruling was reserved.  Following the Court's Rule 29(b) reservation of its decision, Defendant presented his defense.  The jury delivered its verdict on December 3, 2012.

Defendant and the Government have submitted written briefs regarding Defendant's Rule 29 motion and his alternative Rule 33 Motion for a New Trial.  (Docs. 63, 72, 73).  The motion being fully briefed, it is now ripe for ruling.

## DISCUSSION

### I.      Defendant's Rule 29 Motion

#### A.      Rule 29 Standard

Under Federal Rule of Criminal Procedure 29, a defendant's motion for judgment of acquittal should be granted if the Court finds that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  Thus, the Court "must determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008) (citing *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999)).  The conviction must be upheld unless the Court finds that "the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Robles*, 283 F. App'x 726, 735 (11th Cir. 2008) (quoting *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999)).

In construing the evidence, the Court must take the evidence in the light most favorable to the Government.  *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing *United States v. Futrell*, 209 F.3d 1286, 1288 (11th Cir. 2000)).  Accordingly, the Court must "resolve any conflicts in favor of the Government, draw all reasonable inferences that tend to

support the prosecution's case, and assume that the jury made all credibility choices in support of the verdict." *Id.* (citing *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006); *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999)).  "The prosecution need not rebut all reasonable hypotheses other than guilt." *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989).  Thus, "[i]t is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006) (citing *United States v. Mieres-Borges*, 919 F.2d 652, 656 (11th Cir. 1990)).

If, as it did here, the Court reserves decision on the motion made at the close of the Government's evidence then the Court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

### B.      Rule 29 Argument and Analysis

Because the jury returned a verdict of Not Guilty on the false statement charge (Count Three), Defendant's Rule 29 motion for judgment of acquittal applies only to the attempted extortion charge and the federal program bribery charge (Counts One and Two).  (Doc. 50.)

### i.      Count One: Attempted Hobbs Act Extortion

Defendant was indicted and found guilty on Count One for violating 18 U.S.C. § 1951, the Hobbs Act.  "An extortion conviction under the Hobbs Act requires proof that (1) the defendant induced his victim to part consensually with property (2) either through the wrongful use of actual or threatened force, violence or fear or under color of official right (3) in such a way as to adversely affect interstate commerce." *United States v. Smalley*, 754 F.2d 944, 947 (11th Cir. 1985). There are two types of Hobbs Act extortion: (1) extortion by force, which is the

"'obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear;'" and (2) extortion under color of official right, which is the "'obtaining of property from another, with his consent, under color of official right.'" *United States v. Clark*, 773 F.Supp. 1533, 1534 (M.D. Ga. 1991) (quoting *United States v. Williams*, 621 F.2d 123, 124 (5th Cir.1980)).  In this case, the Indictment charges Defendant with attempted extortion under color of official right.  Defendant does not contest that he caused Parker to part with property.

### a. Color of Official Right

Defendant asserts that the evidence was insufficient to establish that he was acting under color of official right for several reasons.  Defendant first argues that because the racetrack project did not involve the county commission, the $15,000[1] payment from Terrance Parker on December 19, 2011, was not a payment made "under color of official right."  Defendant also contends, without support, that for a conviction under 18 U.S.C. § 1951(a), the Government was required to prove that Mr. Parker believed that Defendant, in his official capacity, had the ability to influence the reward of contracts, and that the Government's evidence confirmed that Mr. Parker was aware that the racetrack project was a private enterprise, and therefore could not be influenced by Defendant in his role as county commissioner.  Finally, Defendant argues that to convict Defendant of Count One, the Government was required to prove that the December 19, 2011, payment and the October 23, 2011, payment were both made under color of official right, and that the Government's failure to prove that the December 19, 2011, payment was made under color of official right requires the Court to acquit Defendant of Count One of the Indictment.

---

[1] While Defendant originally solicited $15,000 from Parker, Defendant only accepted $14,000 on December 19, 2011.  The Court will use the $15,000 amount in its Order, as this was the amount originally solicited.

4

The Government contends that it was not required to prove every fact alleged in the Indictment, but rather, facts sufficient to satisfy the essential elements of the crime charged. As such, there was no need to prove that Defendant accepted both payments under color of official right because the evidence regarding the Andersonville depot project and the initial payment of $5,000 was sufficient to support a reasonable juror's conclusion that Defendant was acting under color of official right. The Government also argues that the law does not require that each bribe payment be correlated with a separate official act – only that a payment or payments were made with the intent of securing a type of official action in return – and that the evidence shows that Defendant received the payments in exchange for his promises to help Parker secure county work as it became available.

All of Defendant's arguments are dependent on a single point: that the $15,000 payment was not made under color of official right. This assertion is irrelevant to a conviction based on the charge that Defendant "engaged in a course of conduct, whereby Defendant Hurley solicited [Parker] to consent to provide cash payments, including $5,000 on or about October 23, 2011, and $15,000 on or about December 19, 2011…in exchange for Defendant Hurley's promised official action and influence as a County Commissioner to facilitate the award of Sumter County contracting work to [Parker]." (Doc. 1 at 2.) While *quid pro quo* is a required element of a Hobbs Act prosecution, *United States v. Martinez*, 14 F.3d 543, 553 (11th Cir. 1994), it does not require a distinct act for each distinct payment such that each payment is linked to a separate project.[2] *Evans v. United* States, 504 U.S. 255, 273 (1992) ("a *quid pro quo* with the attendant

---

[2] The Court instructed the jury that "'attempted extortion under color of official right' occurs when a public official receives or attempts to obtain money to which he is not entitled, believing that the money is being or would be given to him in return for the taking or other influencing of official action." (Doc. 49 at 9.) The Court further instructed the jury as to Extortion under Color of Official Right as follows:
> Bribery and Extortion under Color of Official Right require the intent to effect an exchange of money or other thing of value for official action, but each payment need not be correlated with a specific official act.

corrupt motive can be inferred from an ongoing course of conduct.") (Kennedy, J. concurring); *United States v. Delle Donna*, 366 F. App'x 441, 450 (3rd Cir. 2010) ("the official does not have to promise to perform a specific action in exchange for a specific gift; instead, the official can accept a "stream of benefits" in exchange for one or more official acts as though the official is on a retainer."). As such, the Government needed only show that the payments were made in return for Defendant's promise to secure county contracting work for Parker, not that the $15,000 payment was a specific bribe for the racetrack project.

The Government presented the jury with Defendant's own recorded statements, in which he agreed to direct county work to Parker in exchange for bribes. (Doc. 52-1 at 2-3.) Indeed, the first recorded conversation, which occurred on October 18, 2011, includes an explicit agreement by Defendant to accept bribes for his forthcoming assistance in securing county work for Parker, without a particular project in place:

> PARKER: I'm not worried about a time line. You know, as long as you get something . . . I mean, you'll let me know and if I have to help you before then, em . . .
> HURLEY: Well, you know, I need all of that . . . you know, well it's my busy season so I need that like . . . yesterday. Matter of fact, I'm going to a show this weekend, you know, and if I had a little bit to spare on that off, you know, that would . . . that would keep me . . .

(*Id.* at 3.) The jury also heard Defendant agreeing to receive a percentage of the contract amount from Parker once a contract was awarded. (*Id.*) The jury heard a conversation that occurred the following day on October 19, 2011, in which Defendant provided Parker with the details of a $100,000 county project called the Andersonville depot project. (Doc. 52-2 at 1.) Parker asked,

---

The requirement that there be payment of a thing of value in return for the performance of an official act is satisfied where the evidence shows a "course of conduct" of things of value flowing to an agent in exchange for a pattern of official actions favorable to the donor. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that." It must be shown beyond a reasonable doubt that a payment or payments were made with the intent of securing a specific type of official action in return.

"What you gonna be lookin' for?" leading to a negotiated bribe of $5,000. (*Id.* at 2-3). The jury heard testimony from Parker and Agent Allard that on October 23, 2011, Defendant accepted the $5,000 bribe from Parker at a Waffle House and during the meeting, Defendant reiterated that the depot project was in his district and that he would take efforts to ensure that Parker was awarded the project over other contractors, including inmate labor, regardless of the cost to the county. (Doc. 52-3 at 2, 3, 11). The jury also heard testimony from William Twomey, the current Sumter County Administrator, who confirmed that Andersonville was in Defendant's district, that Sumter County was the designated fiscal agent for a $100,000 depot renovation project in Andersonville, and that the Board of Commissioners was heavily involved in the award of contracts, in part by determining which bidders would be considered for a bid.

The jury also heard numerous conversations in which Defendant discussed measures to ensure that Parker won county contracts, including confirming that Parker's credentials were legitimate to avoid triggering any "red flags." (Doc. 52-5 at 5; 52-6 at 1-2; 52-9 at 1-2). During the October 23, 2011, conversation, the jury also heard Defendant repeatedly telling Parker that Defendant would assist Parker in obtaining other county contracts. (Doc. 52-3 at 3, 7, 11, 12, 17.) This discussion was not an anomaly; in a number of later conversations heard by the jury, the topic of Defendant directing county work to Parker was a recurring occurrence. (*See, e.g.*, Doc. 52-4 at 6; Doc. 52-5 at 5; Doc. 52-6 at 4; Doc. 52-7 at 4; Doc. 52-9 at 1). Indeed, Defendant first raised the racetrack project in the context of assisting Parker in obtaining county work, stating that the racetrack project "was coming to my district." (Doc. 52-3 at 6.) The Court finds this evidence sufficient to support a reasonable jury's finding that Defendant was acting under color of official right when he accepted the $5,000 and $15,000 payments for a course of conduct of assisting Parker in obtaining county contracts.

The Court is not free to override the jury's verdict based upon Defendant's narrow reading of the evidence presented by the Government.   "A jury is free to choose among reasonable constructions of the evidence" and this Court is "bound by the jury's credibility determinations, and by its rejection of the inferences raised by defendant." *United States v. Hernandez,* 433 F.3d 1328, 1334 (11th Cir. 2005); *see United States v. Thompson, Thompson,* 473 F.3d 1137, 1142 (11th Cir. 2005) ("The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict."). "The evidence does not have to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Hernandez,* 433 F.3d at 1334–35 (internal citation omitted). "The evidence is sufficient so long as a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt." *United States v. Pineiro*, 389 F.3d 1359, 1367 (11th Cir. 2004).  Viewed in the light most favorable to the jury's verdict of guilty, Defendant fails to show that the evidence presented by the Government was insufficient to support a course of conduct of extortion under color of official right.  Rather, when measured against the Rule 29 standard, the recorded conversations of Defendant and testimony of Parker, Agent Allard, and Mr. Twomey are sufficient to show that when Defendant accepted the $5,000 and $15,000 payments from Parker, he did so, "at least in part, in exchange for the exercise of his influence" as a member of the Board of Commissioners to help Parker secure county work.  (Doc. 73 at 11.)[3]

### b. Potential Impact on Interstate Commerce

---

[3]  Moreover, Defendant's argument that the Government must prove that both the $5,000 and $15,000 payments were made under color of official right is without merit.  It is well-settled law in this Circuit that "the Government need not prove all facts charged in the indictment as long as it proves other facts charged in the indictment which do satisfy the essential elements of the crime." *United States v. England*, 480 F.2d 1266, 1269 (5th Cir. 1973); *see also United States v. Trexler*, 474 F.2d 369, 371-2 (5th Cir. 1973) (same).  As set forth above, the evidence provided by the Government related to the initial $5,000 payment substantially supports the jury's finding that Defendant accepted the payment under color of official right, and thus satisfies the elements of 18 U.S.C. § 1951.

Defendant argues that as no specific project existed that might affect interstate commerce, the Government failed to demonstrate that the extortion had any actual effect on interstate commerce and thus did not meet the jurisdictional requirement of the Hobbs Act. The Government asserts that as Count One involved attempted extortion, the Government need only prove a potential impact on interstate commerce.

The Hobbs Act prohibits extortion, and attempts or conspiracies to extort, that "in any way or degree obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). "Commerce" is defined in the Act as "all commerce between any point in a state ... and any point outside thereof." 18 U.S.C. § 1951(b)(3). "Where attempted extortion or conspiracy to extort are charged, the interstate nexus may be demonstrated by evidence of potential impact on interstate commerce, or by evidence of actual, de minimis impact." *United States v. Farrell,* 877 F.2d 870, 875 (11th Cir. 1989) (citations omitted); *see also United States v. DiCarlantonio,* 870 F.2d 1058, 1061-62 (6th Cir. 1989) ("While a substantive Hobbs Act violation requires an actual effect on interstate commerce, a conspiracy charge requires the government to prove only that defendants' scheme would have affected commerce."). Accordingly, the Government needs only show "a realistic probability of an effect, or some actual de minimis effect, on commerce to bring the extortion within the reach of the Hobbs Act." *United States v. Kaplan*, 171 F.3d 1351, 1354 (11th Cir. 1999). The Eleventh Circuit has further clarified that "[p]otential impact is measured at the time of the attempt, *i.e.,* when the extortion demand is made, based on the assumed success of the intended scheme. A sufficient potential impact exists when there is evidence of 'a plan to embark upon a course of extortionate behavior likely to have the natural effect of obstructing commerce.'" *Farrell,* 877 F.2d at 875 (quoting *United States v. Gupton,* 495 F.2d 550, 551 (5th

Cir. 1974)) (internal citations omitted).  The absence of a specific project does not prevent the potential for interstate impact.  *United States v. Eaves*, 877 F.2d 943, 946 (11th Cir. 1989) (fabrication of a development project for the purpose of a sting operation does not destroy the interstate nexus for a Hobbs Act conviction).

The jury heard testimony from the current Sumter County Administrator, William Twomey, affirming that county contracts often involve out-of-state contractors, the acquisition of out-of-state materials, and the use of out-of-state transportation.  Mr. Twomey also affirmed that a current county contract for a courthouse attracted out-of-state contractors.  Viewing this evidence in the light most favorable to the Government, as required by Rule 29, a rational juror could have found that the attempted extortion for forthcoming county contracts would have likely affected interstate commerce.[4]

As the Court has rejected both of Defendant's challenges to the sufficiency of the evidence as to Count One, the Court **DENIES** Defendant's Motion for Judgment of Acquittal as to Count One of the Indictment (Doc. 63).

---

[4] Both Defendant and the Government incorrectly cite to *United States v. Frost* to support their respective arguments.  In *Frost*, a city councilor was the target of blackmail to force him to resign his council seat.  He testified that the city council employed an out-of-state engineering firm to perform consulting work and that the city sometimes purchased items that moved in interstate commerce.  Originally, the Court in *Frost* found that because the actions of the city council had a minimal effect on interstate commerce, the scheme would have had some effect on interstate commerce.  *Frost*, 61 F.3d at 1524. The Court then modified its earlier opinion, finding that there was no showing "that the resignation of one member of a six-member city council would have impacted the continuing business of that governing body in such a manner to constitute a violation of the federal statute." *Frost*, 77 F.3d at 1320.  The Government's reliance on *Frost* is misplaced because the Eleventh Circuit modified the holding that the Government cites to support its argument of an effect on interstate commerce.  Defendant's reliance on *Frost* is also misplaced, but for other reasons.  Defendant cites to *Frost* to support the proposition that in the absence of an actual project, evidence of a likely effect on interstate commerce is not sufficient proof of interference with interstate commerce.  (Doc. 63 at 10.)  This argument relies on Defendant's mistaken belief that the Government is required to prove an actual effect on interstate commerce, which would require an actual project.  Defendant's argument misreads *Frost* and ignores the Eleventh Circuit's rulings that the non-existence or fictitious nature of a specific project does not prevent the potential for interstate impact.  *See, e.g. United States v. Eaves*, 877 F.2d 943, 946 (11th Cir. 1989) (fabrication of a development project for the purpose of a sting operation does not destroy the interstate nexus for a Hobbs Act conviction).  Defendant also fails to note that *Frost* is inapposite to the instant action because the scheme in *Frost*, restricted as it was to the resignation of a single city councilor, could not be found to be connected to interstate commerce, and no evidence was provided to support such a nexus.  The subject of the scheme in this case was the acquisition of county contracts, which the Government has shown to have a direct effect on interstate commerce, as county contracts often involve out-of-state employees and materials.

### ii.      Count Two: Federal Program Bribery:

Defendant was indicted and found guilty on Count Two of the Indictment of violating 18 U.S.C. § 666(a)(1)(B), federal program bribery.  Defendant's conviction for violating 18 U.S.C. § 666(a)(1)(B), is supported by sufficient evidence if a reasonable juror could find, beyond a reasonable doubt, that he (1) solicited or accepted anything of value; (2) with the corrupt intent to be influenced or rewarded; (3) in connection with any business, transaction, or series of transactions of Sumter County, involving anything of value of $5,000 or more. *United States v. McNair*, 605 F.3d 1152, 1185–86 (11th Cir. 2010).  Defendant does not contest that he solicited or accepted anything of value and instead asserts that the Government produced insufficient evidence at trial that (1) the statute's $5,000 requirement was met; and (2) that Defendant intended to be influenced as a county commissioner.

### a.   The $5,000 Statutory Requirement

The evidence presented at trial established that Parker provided Defendant an envelope containing $5,000 and that Defendant used $100 of this money to pay the bill at the Waffle House for both himself and Parker.  Defendant argues that he is entitled to a judgment of acquittal because the use of the bribe money caused the bribe amount to fall below the statutory minimum of $5,000.

Defendant misreads the law.  The $5,000 in § 666(a)(1)(B) refers to the value of the "business, transaction, or series of transactions," not the value of the bribe. *McNair*, 605 F.3d at 1185.   The evidence presented at trial in Defendant's own words established that the Andersonville Depot project alone was worth $100,000.  Moreover, as the Government notes, Defendant repeatedly discussed projects worth at least a million dollars, and affirmed his intent to secure one of these projects for Parker.  The Court finds that this evidence, viewed in the light

most favorable to the Government as required under Rule 29, was sufficient for a jury to find that the "business, transaction, or series of transactions" was worth at least $5,000.

### b. Intent To Be Influenced In Connection With The Business Of Sumter County:

While Defendant admits that there is no *quid pro quo* requirement in 18 U.S.C. § 666, his argument – that the Government failed to establish that Defendant acted corruptly with the intent to be influenced as a county commissioner – focuses almost exclusively on the fact that Defendant took no action to complete his end of the bargain.[5] Defendant equates the absence of action with the absence of intent to be influenced. However, in a § 666 bribery case, "[t]he intent that must be proven is an intent to act corruptly or to be influenced 'in connection with any business' or 'transaction,' not an intent to engage in any specific *quid pro quo*." *McNair*, 605 F.3d at 1189. Accordingly, the Government only needed to prove that Defendant intended to be influenced or rewarded, not that he took any action or that the bribe actually influenced him.[6]

The evidence presented at trial, when viewed in the light most favorable to the Government, was sufficient for a reasonable jury to find that Defendant intended to be influenced in his role as a county commissioner in exchange for the bribes from Parker. The recorded conversations make clear that Defendant agreed to accept bribes from Parker in exchange for steering county contracts to Parker. In the first recorded conversation that occurred

---

[5] Defendant cites no authority to support his argument that the absence of final decision-making authority precludes a finding of intent. The testimony presented by Mr. Twomey at trial established that the Board often gave significant weight to the opinion of the commissioner whose district is the location of the county project, and that for projects under $100,000, the Board could deviate from contracting protocols. This evidence weighs against Defendant's argument that he lacked any influence over the decision-making process. Moreover, at least one court has questioned Defendant's reasoning, noting that "[t]he fact that the defendant did not control the award of contracts should not be decisive if his position as a state legislator gives his *recommendations* a weight independent of their intrinsic merit." *United States v. Holzer*, 816 F.2d 304, 309 (7th Cir. 1987) *vacated on other grounds by McNally v. United States*, 483 U.S. 350 (1987) (emphasis added). Accordingly, the Court will give no weight to this argument.

[6] As the Court informed the jury, to act "corruptly" means to act voluntarily, deliberately and dishonestly to either accomplish an unlawful end or result or to use an unlawful method or means to accomplish an otherwise lawful end or result. *See* Eleventh Circuit Model Criminal Jury Instructions 24.2.

on October 18, 2011, Defendant explicitly expressed this intent, stating that he was "gonna work on my end" in exchange for Parker's "financial help":

> PARKER: You know . . . em, you say we could move forward on this because like I told you size doesn't matter right now we want to just . . .
> HURLEY: Um hmm.
> PARKER: Get our feet in the door and . . .
> HURLEY: Right.
> PARKER: You know, like I said . . . like you told me you need some help there with that store.
> HURLEY: Exactly. Exactly.
> PARKER: So, you know, any . . . any . . . any financial help I can be . . . you know, as long as you be a man at your word and help me out. You know, I'm . . . I'm willing to help you out as soon as possible.
> HURLEY: Well, that's great. Well, that's great. Well, that's great. Well, I'm gonna work on my end . . .

(Doc. 52-1 at 2.)   The jury also heard a later segment from the same conversation in which Defendant explicitly agreed to a bribe in exchange for assisting Parker in obtaining county contracts:

> PARKER: I'm not worried about a time line. You know, as long as you get something . . . I mean, you'll let me know and if I have to help you before then, em . . .
> HURLEY: Well, you know, I need all of that . . . you know, well it's my busy season so I need that like . . . yesterday. Matter of fact, I'm going to a show this weekend, you know, and if I had a little bit to spare on that off, you know, that would . . . that would keep me . . .

(*Id.* at 3.)  The next day, October 19, 2011, Defendant brought the Andersonville depot project to Parker's attention.  (Doc. 52-2 at 1.)  That conversation, which was heard by the jury, recorded Defendant explaining that the Andersonville depot project was a $100,000 project, that it was in his district, and that Parker should "[l]et me know [the bid deadline] and let me try to work with the man" – again expressing his intent to use his position as a county commissioner to Parker's benefit in exchange for a bribe (*Id.*)  Defendant and Parker then immediately discussed a bribe amount, and agreed upon a sum of $5,000.  (*Id.* at 2.)  Defendant assured Parker that he would

assist Parker in obtaining county contracts on numerous other occasions, including during the October 23, 2011, meeting when Defendant accepted the $5,000 bribe.  (*See, e.g.*, Doc. 52-3 at 3, 7, 11, 12, 17; Doc. 52-4 at 6; Doc. 52-5 at 5; Doc. 52-6 at 4; Doc. 52-7 at 4; Doc. 52-9 at 1.)  As the Court noted above, Defendant also stated that he would take efforts to ensure that Parker was awarded the project over other contractors, including inmate labor, regardless of the cost to the county, thus further supporting the jury's finding that Defendant intended to be influenced. (Doc. 52-3 at 3, 11).

While Defendant argues that the conversations were aimed at ensuring that Parker had his credentials, his own words establish his corrupt intent.  In extorting Parker to obtain proper credentials, Defendant states, "[Y]ou know what happens when…you know, things on the outside don't look right…we stand a chance of getting in trouble."  (Doc. 52-6 at 1.)  In a later conversation, Defendant again cautions Parker about his credentials, again for the purpose of keeping the corrupt bargain clandestine:

> HURLEY: Yeah, that way it keep me out of the clear, you know, and keep, you know the red flags from goin' up. . . . So what I need from you, and I don't need, I don't need you to-, I don't need you to email it to me either, you know, just put it on a letter and mail it to the store, or, or, j-just gimme something, gimme something to work with, you know, and when the job come up, you know, y'know, I'll already have it then, and when you get that, and they can't just come out and say this and that, you know. I have something I can stand up on. So that's what I been waitin' on you the whole while, you know, your credentials . . .

(Doc. 52-9 at 1-2.)

Defendant's arguments ask the Court to again ignore the bulk of the evidence and overturn the jury's verdict.  As the Court stated previously, on a Rule 29 motion, "[i]t is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." *Thompson*, 473 F.3d at 1142.  Viewed in the light most favorable

to the Government as required under Rule 29, the Court finds that a reasonable jury could find that Defendant intended to be influenced or rewarded for a transaction or a series of transactions of Sumter County.

As the Court has rejected both of Defendant's challenges to the sufficiency of the evidence as to Count Two, the Court **DENIES** Defendant's Motion for Judgment of Acquittal as to Count Two of the Indictment (Doc. 63).

**I.      Defendant's Rule 33 Motion**

**A.      Rule 33 Standard**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Rule 33 contemplates "two grounds upon which a court may grant a motion for new trial: one based on newly discovered evidence ...: and the other based on any other reason, typically the interest of justice[.]" *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006).  The decision whether to grant or deny a motion for new trial, rests in the sound discretion of the trial court. *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir. 1987).  When addressing a "'motion for new trial based on the weight of the evidence, the [district] court need not view the evidence in the light most favorable to the verdict, instead, 'may weigh the evidence and consider the credibility of the witnesses.'" *United States v. Martin*, 490 F. App'x. 255, 258–259 (11th Cir. 2012) (quoting *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985)). However, a district court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id.* at 259 (quoting *United States v. Martinez*, 763 F.2d at 1312–1313)). To warrant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the

verdict stand." *United States v. Martinez*, 763 F.2d at 1313; *United States v. Segurola*, 484 F. App'x. 349, 350 (11th Cir. 2012) (same). "A motion for new trial based on the weight of the evidence is 'not favored,' and courts are to grant them 'only in those really exceptional cases.'" *United States v. Williams*, 291 F. App'x 288, 290 (11th Cir. 2008) (quoting *Martinez*, 763 F.2d at 1313).

### B.    Rule 33 Argument and Analysis

Defendant argues that he is entitled to a new trial because the Government's alleged failure to prove that the $15,000 bribe was in connection with a promise to secure county work constituted a material variance.  This argument is reliant on Defendant's assumption that the Government failed to prove all the facts alleged in the Indictment, specifically that the $15,000 bribe was in no way connected to Defendant's duties as a county commissioner.  It is the Court's view that the verdict is not against the weight of the evidence. As discussed above, the Court finds the evidence presented at trial sufficient to support the jury's finding that the $15,000 payment was in exchange for Defendant's promise to secure county work for Parker.  As such, Defendant's material variance argument necessarily fails.[7]    Without a showing of material variance, Defendant has not suffered prejudice.  Defendant's Motion for a New Trial (Doc. 63) is

---

[7] Defendant does not allege that the Government proved different facts than what was stated in the Indictment. Rather, Defendant argues that the Government failed to prove all the facts alleged in the Indictment, and that such a failure constituted a material variance.  A variance occurs when "the evidence at trial establishes facts materially different from those alleged in the Indictment." *United States v. Reed*, 980 F.2d 1568, 1581 (11th Cir. 1993).  In the instant case, the Indictment charged that Defendant "engaged in a course of conduct, whereby Defendant Hurley solicited [Parker] to consent to provide cash payments, including $5,000 on or about October 23, 2011, and $15,000 on or about December 19, 2011…in exchange for Defendant Hurley's promised official action and influence as a County Commissioner to facilitate the award of Sumter County contracting work to [Parker]."  (Doc. 1 at 2.) Assuming Defendant's argument that the Government failed to prove that the $15,000 bribe was in exchange for Defendant's promised official action, the Court analyzes whether the Government proved a different set of facts from what was alleged in the Indictment.  As set forth above, the evidence set forth at trial did not stray beyond the allegations of the Indictment.  The situation, as framed by the Defendant, would therefore seem to be "a failure of proof rather than a variance…[t]he government did not prove a different indictment from the one that it alleged, but rather it failed to prove all that it alleged." *United States v. Russo*, 296 F.2d 1443, 1457 (11th Cir. 1986). Accordingly, the Court finds that no material variance existed.

**DENIED**.  Because the evidence supports the verdict, the interest of justice does not require a new trial.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal Notwithstanding the Verdict or, and in the Alternative, for a New Trial (Doc. 63) is **DENIED**.

**SO ORDERED**, this _29th_ day of May, 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**